IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| NAVAJO NATION, <br><br> Plaintiff, <br><br><br> vs. <br><br><br> LDS FAMILY SERVICES, <br><br> Defendant. | ORDER GRANTING MOTION TO DISMISS <br><br><br><br><br> Case No. 2:06cv00909 |

Under all the legal layers of this case is a young child who has been involved in an adoption process in a Utah state adopting case since shortly after her birth in February 2005. In this court, the Navajo Nation, an intervener in the state case, challenges the adoption procedures used by LDS Family Services. Specifically, the Navajo Nation asks this court to determine if the federal Indian Child and Welfare Act[1] applies when a natural Native American father is unable to establish his paternity under state law, and if it creates a private right of action for the Navajo Nation. But the Navajo Nation has not demonstrated the state court proceeding provides an inadequate forum to hear the claims raised in its petition. The court, therefore, finds it necessary to abstain in this case, and to grant Family Services' motion to dismiss.

---

[1] 25 U.S.C. § 1901, *et seq.*

## BACKGROUND

For purposes of this order, the court finds the following facts. During her pregnancy, Sarah Ashley Ziska contacted LDS Family Services about possibly placing her unborn child for adoption. Ms. Ziska asserted her right to privacy, and declined to identify the father of the unborn child. However, in later meetings, Ms. Ziska informed Family Services the probable father of her unborn child was of Navajo ancestry. Because no one had registered with the Utah Putative Father Registry with regard to Ms. Ziska's unborn child, Family Services proceeded with the adoption process.

On February 14, 2005, Ms. Ziska gave birth to a baby girl. On November 11, 2005, a DNA test result indicated that Herb Begay, Jr., is the biological father of the child. Mr. Begay is a member of the Navajo Nation. But Ms. Ziska is not a member of any tribe, nor is she eligible for enrollment in any tribe.

On February 25, 2005, Ms. Ziska voluntarily relinquished her parental rights to the child in front of Judge Timothy R. Hanson of the Third Judicial District Court, State of Utah. Judge Hanson placed the child with Family Services for adoption. Family Services began to arrange an adoption of the child to a Utah family. The adopting father had an application for membership in the Muscogee (Creek) Nation of Oklahoma pending at the time of the child's placement. The adoptive parents filed a petition for adoption on February 23, 2005, and the Navajo Nation was not notified about the filing of this petition.

Around March 2005, a friend of Mr. Begay's told him Ms. Ziska gave birth to a child that Mr. Begay may have fathered. Around May 3, 2005, Ms. Ziska informed Family Services that

Mr. Begay was the putative father. Family Services claims to have addressed a letter to an intake worker for the Navajo Children and Family Services, advising her of that fact on this same date, but the Navajo Nation disputes this.

On May 31, 2005, Mr. Begay's attorney wrote a letter to Family Services indicating they may have a Navajo child in their custody, awaiting adoption. The letter referred to Mr. Begay's status as a member of the Navajo Nation, suggested Family Services adhere to the requirements of the Indian Child and Welfare Act (ICWA), and requested Family Services to immediately notify the Navajo Nation of any adoption proceedings.

Mr. Begay also filed a Petition for Paternity and Custody in the Third District Court of Utah on May 30, 2005. Judge Anthony Quinn granted summary judgment to Ms. Ziska on February 27, 2006, and dismissed Mr. Begay's petition. Specifically, Judge Quinn found that Mr. Begay had failed to establish his paternity under Utah law, so he was not entitled to an order establishing his paternity or to exercise any paternity rights, including the rights of notice or consent to the child's adoption. Judge Quinn also determined that the Indian Child Welfare Act did not apply to Mr. Begay's paternity action because Mr. Begay was not seeking foster placement, termination of parental rights, adoptive placement, or pre-adoptive placement. Finally, Judge Quinn precluded Mr. Begay from proceeding with any efforts to exercise his parental rights or establish his paternity. Mr. Begay did not appeal the state court's decision.

Although Ms. Ziska consented to the adoption and to the termination of her parental rights on February 28, 2005, the state court adoption proceedings have not yet been finalized. But the adoptive parents have temporary custody of the child pending finalization of the

adoption, pursuant to an order by Judge Hanson.  On May 30, 2006, after learning the location of the court in which Family Services filed the adoption action, the Navajo Nation filed a motion to intervene, which Judge Hanson granted.

On October 24, 2006, the Navajo Nation then filed the instant action, a Petition to Enjoin State Adoption Proceedings and Objection to Placement.  Because the placement of a young child was at stake, this court ordered Family Services to rapidly file either an answer or other appropriate pleading.  Family Services responded by quickly filing the Motion to Dismiss that is at issue in this order.

## STANDARD OF REVIEW

In reviewing a motion to dismiss, the court "must accept as true all of the factual allegations contained in the complaint."[2]  The court accepts all well-pleaded factual allegations as true and views them "in the light most favorable to the nonmoving party."[3]

## DISCUSSION

In its petition, the Navajo Nation requests this court to determine if § 1915(a) of the ICWA applies when the natural Native American father is unable to establish his paternity under state law, and if it creates a private right of action for the Navajo Nation.  Among other things, the ICWA governs adoptions of Native American children. [4]

---

[2] *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1 (2002) (citing *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993)).

[3] *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006) (internal quotation marks and citation omitted).

[4] 25 U.S.C. § 1915(a).

The court concludes that, under *Younger v. Harris*,[5] it must abstain from deciding the issues the Navajo Nation presents because of the ongoing state adoption proceeding. The United States Supreme Court has recognized a "national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances."[6] This policy is based on comity — the notion of respect for state functions.[7] Under *Younger*, only in extraordinary circumstances should federal courts interfere with pending state court proceedings.[8] *Younger* abstention is jurisdictional, so when the conditions for abstention are met, absent waiver, the court has no choice but to abstain.[9]

To determine whether *Younger* abstention is required, the court must consider whether:

(1) there is an ongoing state criminal, civil or administrative proceeding, (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) the state proceedings involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated stated policies.[10]

In this case, all three considerations make clear that this court must abstain.

The Tenth Circuit's decision in *Morrow v. Winslow*[11] applying these considerations in an

---

[5] 301 U.S. 37 (1971).

[6] *Id.* at 41.

[7] *Id.* at 44.

[8] *Id.* at 45; *Morrow v. Winslow*, 94 F.3d 1386, 1393 (10th Cir. 1996).

[9] *See Morrow*, 94 F.3d at 1390; *Crown Point I, LLC v. Intermountain Rural Elec. Ass'n*, 319 F.3d 1211, 1229 (10th Cir. 2003).

[10] *Crown Point I*, 319 F.3d at 1215.

[11] 94 F.3d 1386.

analogous case demonstrates the inevitability of the court's abstention in this case.  In *Morrow*, the plaintiff was a recognized citizen of the Cherokee Nation.[12]  Mr. Morrow's former spouse became pregnant and decided to place the child up for adoption.[13]  The mother-to-be contacted a private adoption agency and found what she thought to be a suitable placement for the child.[14]  Mr. Morrow was apprised of the pending adoption and first objected to it at a hearing the state court judge had scheduled to determine if it was necessary to obtain Mr. Morrow's consent before approving the adoption.[15]  A short time after he objected at this hearing, Mr. Morrow filed for custody of the child and asserted that the adoption proceedings had failed to comply with the ICWA.[16]  Then, with permission from the court, the Cherokee Nation intervened in the proceedings.[17]  Shortly before the state court trial date, Mr. Morrow filed a claim with the United States District Court in Oklahoma.[18]  The state judge stayed the adoption case pending the outcome of the federal proceedings.[19]

      In the federal case, the district judge addressed the merits of Mr. Morrow's claims, and

---

[12] *Id.* at 1388.

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Id.* at 1389.

[19] *Id.*

denied Mr. Morrow relief.[20] Mr. Morrow appealed the district judge's determination to the Tenth Circuit.[21] The Tenth Circuit concluded that the district court erred by assessing the merits of the case.[22] Instead, the district court should have abstained from hearing the case pursuant to *Younger*.[23] The court quoted Supreme Court jurisprudence cautioning "'against federal intervention in state judicial processes in the absence of great and immediate irreparable injury to the federal plaintiff.'"[24] Specifically, the Tenth Circuit found that policies underlying *Younger* applied to areas of state policy such as family relationships.[25] The court determined that ICWA claims could be heard by either federal or state courts and that nothing in the ICWA indicated a congressional intent "to allow federal court interdiction of ongoing state custody disputes involving Indian children."[26] Ultimately, the court did "not believe that Congress envisioned [the ICWA] to authorize the type of federal court supervision into ongoing state adoption proceedings that Morrow ask[ed it] to impose."[27]

In this case, just as in *Morrow*, the plaintiff has proffered no grounds that would suggest

---

[20] *Id.*

[21] *Id.*

[22] *Id.* at 1398.

[23] *Id.*

[24] *Id.* at 1393 (quoting *Moore v. Sims*, 442 U.S. 415, 423 (1979)).

[25] *Id.*; *see also Moore*, 442 U.S. at 435.

[26] *Morrow*, 94 F.3d at 1395.

[27] *Id.* at 1396.

the court should not abstain in this case.  First, as in *Morrow*, the proceedings before the state court are ongoing.  The adoption of Ms. Ziska's child has not yet been finalized in state court.  The adoption proceedings were first extended when Mr. Begay adjudicated his rights in state court, then extended again when the Navajo Nation intervened in the case on June 26, 2006.  Therefore, there is an active, civil proceeding in state court.  Further, the proceedings before this court are in an "embryonic stage" and this court has decided no contested matters, putting this claim flatly within the ambit of *Younger*.[28]

Next, the Navajo Nation has not met its burden of showing the claims it raised in this court could not be raised in state court.[29]  As an initial matter, this court is confident that Utah's state courts can adequately protect the Navajo Nation's rights — state processes are entirely capable of "accommodating the various interests and deciding the constitutional questions that may arise in child-welfare litigation."[30]  In *Morrow*, the Tenth Circuit was careful to note this same principle.[31]  Not only can Utah state courts ably decide such issues, the Navajo Nation has not cited to any procedural bar preventing it from raising its claims in the state forum.  "[T]he only pertinent inquiry is whether the state proceedings afford an adequate opportunity to raise the . . . claims."[32]  Navajo Nation attempts to distinguish this case from *Morrow* by pointing out that

---

[28] *See Doran v. Salem Inn, Inc.*, 422 U.S. 922, 929 (1975).

[29] *See J.B.* ex rel. *Hart v. Valdez*, 186 F.3d 1280, 1292 (10th Cir. 1999).

[30] *Moore*, 442 U.S. at 435.

[31] *Morrow*, 94 F.3d at 1393.

[32] *Moore*, 442 U.S. at 430.

in *Morrow*, the father of the child, not the Cherokee tribe, filed suit in federal court. However, this distinction becomes superficial when considering that Judge Hanson gave the Navajo Nation permission to intervene in the ongoing state proceedings, which gives it a voice in the case. There is no indication the Navajo Nation's rights will be inadequately protected in the state process. Utah law obviously does not bar consideration of ICWA claims in adoption proceedings, as Mr. Begay framed some of his arguments in light of the ICWA and Judge Hanson addressed his arguments on their merits.

Finally, adoption proceedings involve important state interests. Indeed, in *Morrow*, the Tenth Circuit recognized that "adoption and child custody proceedings are an especially delicate subject of state policy" and familial relations are "a traditional area of state concern."[33] United States Supreme Court jurisprudence supports this view. In *Moore v. Sims*,[34] the Supreme Court heard a case in which two parents sued in a federal district court alleging the Texas Family Code was unconstitutional.[35] Before this suit, the Texas Department of Human Resources had filed a suit in a Texas state court requesting emergency protection of the parents' three children.[36] The Supreme Court determined the federal district court should have abstained from hearing the case because familial relations were a traditional area of state concern.[37]

---

[33] *Morrow*, 94 F.3d at 1393 (citations and internal quotation marks omitted).

[34] 442 U.S. 415.

[35] *Id.* at 419.

[36] *Id.* at 420–21.

[37] *Id.* at 430–31.

The fact that this challenge arises under the ICWA does not suggest a different outcome. The ICWA does not "authorize the type of federal court supervision into ongoing state adoption proceedings"[38] that would be necessary if this court heard this case. "Indeed, the ICWA grants concurrent jurisdiction in state and federal courts over adoption proceedings brought under its provisions."[39]

In *Moore*, the challenged statutes implicated important federal constitutional questions that were nonetheless left to state court. Similarly, although the Navajo Nation has filed a claim under the ICWA, a statute which implicates important federal interests, the statute does not singlehandedly override the important state interests at stake. Indeed, the policies underlying *Younger* are especially important in cases such as this, where the "duplicitous and protracted litigation"[40] resulting from ongoing federal and state cases will directly impact the welfare of a young child — a child who has not yet attained permanent placement.

Finally, as in *Morrow*, the fact that private parties (rather than the State) are the primary litigants does not change this balance. Even where private litigation is involved, a state's interest can be important — as demonstrated by the *Morrow* case itself.[41] For all these reasons, the *Younger* doctrine, as applied in *Morrow*, appears plainly applicable.

Although exceptions to the *Younger* doctrine exist, none applies in this case. A party is

---

[38] *See Morrow*, 94 F.3d at 1396.

[39] *Navajo Nation v. Dist. Court for Utah County, Fourth Judicial Dist., State of Utah*, 624 F. Supp. 130, 134 (D. Utah 1985).

[40] *Morrow*, 94 F.3d at 1395 n.5.

[41] *Id.* at 1397.

not required to exhaust her state appellate remedies before seeking a federal injunction if (1) the state proceeding is conducted in bad faith or is motivated by a desire to harass, (2) the challenged statute flagrantly violates express constitutional prohibitions, or (3) extraordinary circumstances exist.[42]  The Navajo Nation has not even attempted to make a showing that any of these exceptions apply or that it may suffer any kind of an irreparable injury if the state court hears its claims.  Moreover, it appears from the facts that the Navajo Nation would be unable to make such a showing.

## CONCLUSION

Because the court finds it necessary to abstain from hearing this case, the court GRANTS Family Services' Motion to Dismiss [#5].  The Clerk's Office is directed to dismiss the petition and close the case.

DATED this 12th day of December, 2006.

BY THE COURT:

_____
Paul G. Cassell
United States District Judge

---

[42] *Id.* at 1392.